UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GEORGE W. STRICKLAND,

    Petitioner,

v.                                           Case No. 8:06-cv-2390-T-24MAP

SECRETARY DEPARTMENT OF CORRECTIONS,

    Respondent.
_____/

## **ORDER**

This cause is before the Court on George W. Strickland's 28 U.S.C. § 2254 petition for writ of habeas corpus. Strickland challenges his conviction and sentence entered by the Circuit Court for the Tenth Judicial Circuit, Polk County, Florida. A review of the record demonstrates that the petition is time-barred and that the claims have no merit. Therefore, the petition for writ of habeas corpus must be **denied.**

PROCEDURAL HISTORY

On November 10, 1993, Strickland was indicted on charges of first degree murder and armed burglary in case number CF93- 4721A1-XX. (Exhibit 1, Record on Direct Appeal, R67- 8). On February 10, 1995, Strickland was found guilty of first degree murder and burglary. (Exhibit 1, R72). Strickland was sentenced to a term of life on the first degree

murder charge[1] and to four-and-one-half years imprisonment on the burglary charge, to run concurrent to the life sentence. (Exhibit 1, R74-82).

Strickland appealed, and the state district court of appeal per curiam affirmed the conviction and sentence on February 19, 1997. *Strickland v. State*, 689 So.2d 1080 (Fla. 2d DCA 1997). (Exhibit 1, R86).  Next, Strickland filed a 3.850 motion for postconviction relief, (Exhibit 1, R87-219). On September 5, 2000, the state trial court granted Strickland's motion for postconviction relief, vacated the judgment, and granted Strickland a new trial. (Exhibit 1, R287-90).  The State filed a motion for rehearing,  which was denied. (Exhibit 1, R293-95).

Strickland's second trial was held May 5, 7, 8, 9, 12, 13, and 14, 2003. Strickland was again found guilty of first degree murder and burglary.  The state trial court sentenced Strickland to a life sentence on the first degree murder charge and to a four-and-one-half year concurrent sentence on the burglary charge. (Exhibit 1, R 397-400).

On June 13, 2003, Strickland appealed the conviction and sentence from his second trial. (Exhibit 1, Record on Direct Appeal, R404). On December 22, 2004, the state district court of appeal affirmed the conviction and sentence. *Strickland v. State*, 889 So.2d 219 (Fla. 2d DCA 2004). (Exhibit 4, Case No. 2D03-2972). The mandate issued on January 18, 2005. (Exhibit 5, Mandate, Case No. 2D03-2972).

On March 23, 2006, Strickland, through counsel, filed a rule 3.850 motion for postconviction relief. (Exhibit 6, Record of Post-Conviction Appeal, Case No. 2D06-3017). On April 6, 2006, the state trial court summarily denied the rule 3.850 motion. (Exhibit 6,

---

[1] The minimum mandatory sentence was 25 years.

Record of Post-Conviction Appeal, Case No. 2D06-3017). On May 3, 2006, Strickland filed a pro se motion requesting permission to file a successive/second motion for postconviction relief. (Exhibit 6, Record of Post-Conviction Appeal, Case No. 2D06-3017). On May 19, 2006, the state trial court issued an "Order Granting Defendant's Motion Requesting Permission to File Successive/second Motion for Post-conviction Relief and Order Denying Defendant's Second/successive Motion for Postconviction Relief." (Exhibit 6, Record of Post-Conviction Appeal, Case No. 2D06-3017).

On June 16, 2006, Strickland appealed the denial of his second/successive motion for postconviction relief. On October 13, 2006, the state district court of appeal per curiam affirmed the denial of rule 3.850 postconviction relief. (Exhibit 8, Second District Opinion, Case No. 2D06-3017). The mandate issued November 3, 2006.(Exhibit 9, Second District Docket, Case No. 2D06- 3017).

Meanwhile, on September 19, 2006, Strickland filed a pro se petition for writ of habeas corpus in the state district court of appeal alleging ineffective assistance of appellate counsel. (Exhibit 10, Petition for Writ of Habeas Corpus, Case No. 2D06-4280). Strickland alleged that appellate counsel was ineffective for failing to raise a collateral estoppel issue and for failing to file a brief which complied with the Florida Rules of Appellate Procedure. On October 23, 2006, the state district court of appeal summarily denied the state petition for writ of habeas corpus. (Exhibit 11, Second District Order, Case No. 2D06-4280). On November 3, 2006, Strickland filed a motion for rehearing. (Exhibit 12, Motion for Rehearing, Case No. 2D06- 4280). On December 15, 2006, the state district

court of appeal denied the motion for rehearing. (Exhibit 13, Second District Order, Case No. 2D06- 4280).

Strickland signed the present federal petition for writ of habeas corpus on December 22, 2006. The petition is **untimely**.

## AEDPA Standard for Timeliness

The Anti-Terrorism and Effective Death Penalty Act created a new limitations period for petitions for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. "A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of ... the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review...." 28 U.S.C. §2244(d)(1)(A). Additionally, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

### **Calculation To Demonstrate That Strickland's Petition Is Untimely**

Strickland's conviction became final on March 23, 2005, **ninety (90)** days after his judgment and sentence were affirmed [on December 22, 2004.] *See Bond v. Moore*, 309 F.3d 770, 772 (11th Cir. 2002)(one-year limitations period for Florida prisoner's federal habeas petition started to run when time expired for filing petition for certiorari from state high court's denial of discretionary review). *See also Clay v. United States*, 537 U.S. 522, 526-27 (2003)(The 90 days allowed for filing a petition for writ of certiorari begins on the

date the appellate court issues its opinion on the direct appeal, not from the date the appellate court issues its mandate). Strickland's one-year time period began to run on March 23, 2005, and did not stop running until Strickland filed his state 3.850 motion for postconviction relief on March 23, 2006, **365 days later**. This calculation means that the one-year period was not tolled for 365 days. Strickland's one-year period was tolled until his motion for rehearing was denied on December 15, 2006. The one-year period began to run on December 16, 2006, and Strickland allowed another **seven (7)** days to pass before he filed the present federal petition on December 22, 2006. This present federal petition is untimely because Strickland's one-year period for filing a timely petition was not tolled for **372 days** (365 + 7 = 372 days) after his conviction was final on direct appeal before he filed the federal petition.

Strickland has failed to demonstrate extraordinary circumstances that would support equitable tolling.

Even if the petition were timely, Strickland's claims do not merit federal habeas corpus relief for the following reasons.

## STANDARDS OF REVIEW

### AEDPA Standard

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary

to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). Indeed, it is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." Id. *Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

### Ineffective Assistance of Counsel Standard

To prevail on a claim of ineffective assistance of trial or appellate counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

### DISCUSSION

### Ground One

STRICKLAND WAS DENIED HIS 6TH AND 14TH AMENDMENT RIGHTS UNDER THE U.S. CONSTITUTION TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN APPELLATE COUNSEL FILED AN INITIAL BRIEF OF APPELLANT WHICH FAILED TO COMPORT WITH THE FLORIDA RULES OF APPELLATE PROCEDURE AND UNDERMINED THE OUTCOME OF THE DIRECT APPEAL.

Strickland alleges that his counsel was ineffective because appellate counsel made technical and typographical errors in the appellate brief he filed. However, Strickland has made no showing of how these formatting errors were so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. Furthermore, Strickland

has made no showing that the outcome of his appeal would have been different if the brief had not contained the technical errors. Under the circumstances, Strickland cannot establish deficiency or prejudice under *Strickland v. Washington.*

Ground one does not warrant habeas corpus relief.

### Ground Two

STRICKLAND WAS DENIED HIS 6TH AND 14TH AMENDMENT RIGHTS UNDER THE U.S. CONSTITUTION TO EFFECTIVE ASSISTANCE OF COUNSEL ON DIRECT APPEAL WHEN APPELLATE COUNSEL FAILED TO RAISE AN ISSUE THAT COLLATERAL ESTOPPEL PREVENTED THE STATE FROM PROSECUTING STRICKLAND UNDER THE FELONY MURDER THEORY DUE TO THE JURY VERDICT IN THE FIRST TRIAL.

Strickland alleges that appellate counsel was ineffective for failing to argue that the jury should not have been instructed on felony murder because the jury in the previous trial had found that the burglary was committed without a firearm. (Exhibit 1, R 71).

Trial counsel filed a motion to preclude an instruction on felony murder based on collateral estoppel because the jury in the first trial did not find that the burglary was committed while Strickland was armed. (Exhibit 1, R 333-336). The trial court orally denied the motion during the trial and after argument at sidebar. (Exhibit, Record on Direct Appeal, Vol. IX, T 1109-1115).

The trial court did not err in denying trial counsel's motion to preclude an instruction on felony murder. The instruction was not barred by collateral estoppel. The prosecutor argued that the fact that the jury in his previous trial did not convict him of armed burglary did not preclude a jury instruction or finding of felony murder in his second trial:

> PROSECUTOR: The previous jury simply having found that the burglary that they did convict him of was not an armed burglary, does not preclude the finding of felony murder, specifically when you look at the law on felony

murder and the statute and certainly case law, even the jury instruction there is three parts to looking at the defendant's action during which the death occurs as a consequence of, one of those is while the individual is engaged in the commission of the crime itself, one is when the defendant is attempting to commit a crime, the underlying felony, and one is when the defendant is escaping from the immediate scene of one of the underlying crimes.

The fact that the previous jury simply did not find that the burglary itself was armed simply means just that, that they made the determination that he was not armed at the burglary. But clearly there is no way by looking at that and [sic] determine that specific jury verdict that it can be said that they made a determination that the defendant was not escaping from the immediate scene of the burglary that they just convicted him of or that he was attempting to commit the burglary itself.

In this particular circumstances clearly based on that the evidence of the shooting took place outside the residence and not inside the residence. The testimony would be such I believe it's acceptable from the state's vantage point and purposes of the JOA that the defendant did in fact make an unlawful felony entry into the residence based upon the door being locked, the door being kicked in, the 911 phone call not being completed when it got started from that residence, I think it clearly there's sufficient basis for the jury making the determination that a burglary did occur, and even a burglary with assault or battery, especially with the additional testimony at this trial from Erica who saw the victim being forcibly drug [sic] out of the residence. And then it's clear the shooting took place outside.

Now certainly a jury has the right to make a determination that the burglary was over with at the time that the killing took place, but even if they did make that determination from the facts that doesn't preclude the finding of felony murder because if the defendant was escaping from the immediate scene of having committed one of the underlying felonies and as a consequence of that escaped from the area that the jury could also make the determination that would qualify for the purposes of felony murder.

And even in this particular case I believe that even though they could find - of course they won't be allowed to consider it being a firearm, but even in the previous case the jury did make the determination that although it was not armed burglary that they could make the determination that it was during the commission of the burglary and even certain escape thereafter that he did in fact shoot and kill and take the victim's life. And for that reason I don't think the felony murder theory should be JOA.

(Exhibit 1, Record on Direct Appeal, Vol.IX:T1112-14).

- 8 -

In denying defense counsel's motion to preclude an instruction on felony murder based on collateral estoppel the state trial court stated:

> From a legal standpoint the jury is instructed to find the highest – find the defendant guilty of the highest crime of which they feel is supported by the evidence. So the finding of first degree murder precludes them from needing to consider whether there were lesser included offenses committed so they did not determine at the last trial that the defendant did not commit felony murder, they found at the last trial that it was first-degree. Accordingly, there is no double jeopardy with regard to the felony murder theory.
>
> I find that it is not necessarily for the defendant to have been armed in order to make a determination that a felony murder could be committed under the facts presented in this case, and I find it on two basis [sic]. On the first basis is that they could find it whether or not he is armed when he actually commits the burglary. The second basis is I don't – the defendant's double jeopardy rights are protected by not presenting them the option of armed burglary in this case. Even if the jury finds that it was armed in this case when he committed the burglary, and that it the basis for the felony murder, that would not be a violation of double jeopardy because his double jeopardy rights pertained to what the jury found in the first trial and not what the determination is as to what the potential crimes are in this particular case.
>
> The defendant unlike the *Eagle versus State* case was not acquitted for the underlying felony in this case, the defendant was actually found guilty of burglary in the first case, so there is no double jeopardy problem, so I'm going to deny the Motion for Judgment of Acquittal on the felony murder issue.

(Exhibit 1, Record on Direct Appeal, Vol.IX:T1114-15).

The trial court correctly concluded that there was no collateral estoppel or double jeopardy problem in giving the felony murder instruction. The previous jury's finding that the burglary was not committed with a firearm did not prevent the jury in Strickland's second trial from finding him guilty of felony murder. Furthermore, there was competent substantial evidence upon which the jury could have found the defendant guilty of first degree premeditated murder or first degree felony murder.

Evidence at Trial

Evidence at trial revealed that the victim, Jennifer Howard, had attempt to break off her relationship with Strickland in the weeks leading up to her murder. Strickland had confronted her at the restaurant where she worked and had thrown an ashtray at her and damaged her car. (Exhibit 1, T416-7). Strickland tried to get a security guard from K-Mart to follow her to a party. (Exhibit 1,T429). He then went to the party himself.

The victim's mother, Jeannie Avsenew, testified that the Friday before her daughter was murdered, Strickland left numerous messages on her answering machine. (Exhibit 1, T930). Tapes of the messages were entered into evidence and published to the jury. When Avsenew spoke to Strickland, he accused her daughter of "whoring around." He said he was in Jennifer's house and saw an outfit she had laid out to wear to an upcoming party. (Exhibit 1, T931). He wanted Ms. Asvenew to talk her daughter into taking him back. (Exhibit 1, T932). When the victim's mother called Strickland a liar, he became infuriated and said that nobody called him a liar and got away with it. (Exhibit 1, T937). Ms. Asvenew testified that she had previously seen Strickland with a handgun and holster. (Exhibit 1, T938).

The victim's father, John Swartz, testified that after the incident at Chili's where Strickland threw the ashtray and damaged Jennifer Howard's car, his daughter and her children stayed with Swartz for a week. (Exhibit 1, T950). He said that Strickland called his residence the weekend before her murder and wanted to speak to Jennifer. Strickland called four or five times. (Exhibit 1, T951). The following Monday, Jennifer Howard obtained a protective injunction against Strickland. The injunction was served on Strickland on

Monday October 25th at 4:15 p.m. (Exhibit 1, T492). On Tuesday, Swartz changed the locks on his daughter's house because Strickland had a key. (Exhibit 1, T960).

Cheryl Selinski, a friend of the victim, testified that Strickland came to her home in Polk City where she and the victim and another friend, Doug, were watching TV the Sunday before Jennifer's murder. (Exhibit 1, T980). Strickland yelled from outside for Jennifer. Jennifer went outside and talked to him. After she talked to him she came inside quickly and "slapped" the door. She was nervous, shaking, upset and crying. (Exhibit 1, T983). The police were called and came to the residence. After the police left, Strickland returned and wanted to talk to Jennifer. Jennifer did not go outside. The police were called again, but Strickland left before a different officer arrived. (Exhibit 1, T987).

Doug testified that Jennifer did not want to go back to her house. Jennifer stayed at Cheryl's that night. (Exhibit 1, T1026). Kathy Thompson, who was one of the officers who responded to Cheryl's residence, testified that she "pulled Strickland over" and told him to stay away from Jennifer. (Exhibit 1, T702-704). Strickland later told other witnesses, Rebecca Grayston and Chip Buckner, that he had a gun under his seat when he was pulled over by Thompson in Polk City. (Exhibit 1, T866).

Chip Buckner, a Deputy Sheriff and close friend of Strickland, testified that Strickland owned at least two revolvers. One was a .38 with a holster. (Exhibit 1, T866). Buckner testified that Strickland told him he had one of the guns when he was stopped by Deputy Thompson in Polk City. Strickland showed him copy of a letter that he left at the victim's house. (Exhibit 1, T867). Strickland told Buckner that he did not think the victim was telling him the truth about their break up. He thought there was another man. (Exhibit 1, T870).

Strickland called Buckner at home and told him about the restraining order that Jennifer had obtained. (Exhibit 1, T875). Buckner advised him to stay away from Jennifer and encouraged him not to give Jennifer the letter that Strickland had shown Buckner. (Exhibit 1, T876).

David Sweeney, a friend of Strickland's, testified that late on Wednesday, October 27th at about 11:30 p.m. or midnight, Strickland knocked on his window at 1512 Edgewood Drive and wanted to borrow Sweeney's car saying his had broken down and he needed a car to get his dad. (Exhibit 1, T439-40). Sweeney lived a block from the Texaco station at the corner of New Jersey and Edgewood. (Exhibit 1, T436). Sweeney gave him a spare set of keys to his car and told him to where to leave the car the next morning. Sweeney's car was later found abandoned and hidden near the intersection of I-4 and I-75 with items that did not belong to Sweeney in the car, including a rifle, a bottle of peroxide, a towel, a pair of boots, a datebook and a guitar (Exhibit 1, T450-451). Strickland's vehicle was later found parked at the Texaco station near New Jersey and Edgewood and was in working order. (Exhibit 1, T676).

Cheryl Selinski testified that she had dinner at Jennifer's on Wednesday the 27th. She and Doug went there for dinner and to watch TV. While they were there, the phone rang "every few minutes." When Jennifer answered, she would immediately hang up. She eventually turned the ringer off. (Exhibit 1, T992). Jennifer's children were in bed.

Cheryl and Doug left Jennifer's about 11:45 p.m. on Wednesday the 27th. When Doug and Cheryl left, the phone was not pulled off the wall, the receiver was not disconnected, and the door was intact and secure. (Exhibit 1, T1029). After they left, they

drove through the neighborhood checking for Strickland's car, but did not see it. They then drove back by Jennifer's house and waved. That was the last time they saw her. (Exhibit 1, T995).

A 911 call from Jennifer's house was received at 12:17 a.m. on Thursday the 28th. The call was terminated before the operator could answer. (Exhibit 1, T473).

Jennifer's daughter, Erica Kelly Howard, testified that she was three years old at the time of the murder. She was awakened by the sound of the breaking door. She got out of her bed and stood behind the corner in the hallway. She saw Strickland with a gun. When she first saw her mother, her mother was running towards the kitchen. Erica testified that she heard something rip out of the wall and then she saw Strickland holding her mother's hair and saw him pull her mother out the front door. (Exhibit 1, T1079). She then saw Strickland shoot her mother. (Exhibit 1, T1080). After Strickland drove away, she woke her sister and they went out into the driveway.

Jennifer's neighbors reported that they heard a scream followed by a gunshot and a car "taking off." (Exhibit 1, T568,611). One of the neighbors saw a man driving away in a silver or grey car. (Exhibit 1, T613-5). Roger Doyle, a neighbor, found Jennifer lying on her driveway. She had no pulse and was not breathing. Doyle testified that one of Jennifer's daughters was close by pleading with her mother to get up. (Exhibit 1, T597). The neighbors made 911 calls within minutes after the 911 call from the victim's house. (Exhibit 1, T471-477).

Photos from the scene of the homicide revealed that the front door was damaged, indicating that the door was in the locked position before the damage occurred. Splintered

wood from the door was found on the living room floor. The telephone receiver was on the floor.(Exhibit 1, T149-54,170). The telephone was pulled out of the wall and a plant was knocked over. (Exhibit 1, T1051). Jennifer had been shot in the head at close range of less than one foot. (Exhibit 1, T813). A key chain with Strickland's car keys and his house key were found at the scene of the crime. The house key was to the lock that had been changed by Jennifer's father the day before. (Exhibit 1, T1054-6)

Strickland eventually turned himself in. Detective Martha McWaters testified that after he did so, she sent a deputy to get handcuffs and explained to Strickland that it was policy to handcuff people in transport. Strickland then said "That's okay, I murdered somebody, at least I'm a suspect."  Strickland then asked if she was going to use his words against him and she said she would. She testified at trial that Strickland then said "I want to make sure you quoted me right" and he said "I'm a murderer by suspicion." (Exhibit 1, T1066-7).

Overwhelming evidence supported Strickland's conviction of first degree murder. Even if Strickland's meritless collateral estoppel issue had been raised on appeal, the outcome of the appeal would have been no different. Accordingly, the state district court of appeal did not err in denying the ineffective assistance of appellate counsel claim based on the same allegations in Strickland's state petition for writ of habeas corpus.

Appellate counsel cannot be found ineffective for failing to raise a meritless issue, and there was no meritorious collateral estoppel issue in this case. If this issue had been raised on direct appeal, Strickland would not have prevailed. Strickland cannot establish either prong of *Strickland*, and Ground Two does not warrant habeas corpus relief.

Ground Three

> STRICKLAND WAS DENIED HIS 6TH AND 14TH AMENDMENT RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE U.S. CONSTITUTION FOR TRIAL COUNSEL'S FAILURE TO CALL AN EXPERT WITNESS WHICH PREJUDICED STRICKLAND.

Strickland contends that trial counsel was ineffective for failing to call expert witness, Dr. Harry Krop, "concerning the testimony of Erica Howard, who was the victim's daughter."

Strickland contends, in his reply to Respondent's response to the petition:

> This case presents the unusual scenario of Erica Howard, being three (3) years old when the offense occurred and showing no sign of witnessing the offense, then suddenly becoming an eyewitness several years later before the Petitioner's second trial. Trial counsel retained Dr. harry Krop to observe Erica Howard's deposition to determine if Ms. Howard's testimony was a fabricated memory.

(Doc. No. 12 at pp. 11-12)

Strickland raised this claim in his second/successive motion for postconviction relief. In denying relief on this ground, the state trial court found:

> In claim 1 of his Motion, Defendant argues that Mr. Shearer [defense counsel] was ineffective for not calling Dr. Harry Krop, a clinical psychologist, as a witness for the defense in an effort to "challenge the validity of the State's child eyewitness." Motion at 3. Defendant alleges that Dr. Krop was a witness to the child's deposition and, afer observing and evaluating the witness' testimony, concluded that the child was "simply being untruthful and repeating a memorized story." Id.
>
> Defendant continues and argues that he "requested Counsel to call this expert witness to refute [the witness'] testimony at trial. Defendant contends that expert witness was necessary in his defense." Id.
>
> Necessity is not, however, the standard of admissibility. Section 90.702, Fla. Statutes, allows for the opinion testimony of expert witnesses. However, the expert's testimony is only admissible "if" such testimony would "assist the trier of fact in understanding the evidence or in determining a fact in issue." As stated by the Florida Supreme Court in *McMullen v. State,* 714 So.2d 368, 371 (Fla. 1998), "Expert testimony should be excluded when the facts testified to are of such a nature as not to require any special knowledge or experience in order for the jury to form its conclusions. We hold that a jury is fully capable

>of assessing a witness' ability to perceive and remember, given the assistance of cross-examination and cautionary instructions, without the aid of expert testimony." *See also Bryant v. Buerman*, 739 So.2d 710,712 (Fla. Dist. 4th DCA 1999)(Generally, and expert should be permitted to testify when his or her specialized knowledge or experience will "assist the trier of fact in understanding evidence or determining a fact in issue." §90.702, Fla. Stat. (1997). Conversely, the opinion of an expert should be excluded where facts testified to are of a kind that do not require any special knowledge or experience in order to form a conclusion, or are of such a character that they should be presumed to be within the common experience and knowledge of the jurors.")
>
>The issues for determination are, therefore, whether the subject of this proffered expert's testimony required any specialized knowledge or experience for the jury to decide or if such testimony would have assisted the jury in its determination of the issue. The subject of the proffered testimony is the opinion that the witness was fabricating her testimony. As such, the testimony of the expert witness would have been offered to establish the credibility or veracity of the child witness' testimony. However, the credibility of the witnesses is determined every day in every level of the courts without any assistance from experts. In fact, the credibility of witnesses is discussed in Standard Criminal Jury Instruction 3.9, *Weighing the Evidence*, which provides in pertinent part; "It is up to you [the jury] to decide what evidence is reliable. You should use your common sense in deciding which is the best evidence, and which evidence should not be relied upon in considering your verdict." Instruction 3.9 goes on to instruct the jury on how to determine credibility and believability of witnesses, and concludes by advising the jury: "You may rely upon your own conclusion about the witness. A juror may believe or disbelieve all or any part of the evidence or the testimony of any witness."
>
>Based on the above, the Court finds that the credibility of the child witness in this case was not a proper subject for expert testimony because such credibility and veracity issues require neither specialized training and experience nor the assistance of an expert in order to determine. Therefore, the proffered testimony of Dr. Krop was not admissible, defense counsel can not be ineffective for failing to call a witness who's [sic] testimony would not have been allowed. Accordingly, claim 1 fails to establish a prima facie case of error on the part of defense counsel; i.e., the first prong of the *Strickland* analysis.

(Exhibit 6, Record of Post-Conviction Appeal, Case No. 2D06-3017).

The state trial court correctly concluded that the proffered testimony of Dr. Krop was inadmissible. Strickland's proposed purpose in calling Dr. Krop was to elicit his opinion that the child's eyewitness account of her mother's murder was not credible. The trial court correctly concluded that "the credibility of the child witness in this case was not a proper subject for expert testimony because such credibility and veracity issues require neither specialized training and experience nor the assistance of an expert in order to determine." The state trial court correctly concluded that trial counsel cannot be deemed ineffective for failing to call a witness whose testimony would have been inadmissible. Even if Dr. Krop had been called to testify, his opinion that the child was not credible would not have been allowed and the outcome of the proceeding would have been the same.[2] Strickland cannot establish ineffectiveness of trial counsel under either of the *Strickland* prongs.

Ground Three does not warrant habeas corpus relief.

## Ground Four

STRICKLAND WAS DENIED HIS 6TH AND 14TH AMENDMENT RIGHTS UNDER THE U.S. CONSTITUTION TO EFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHEN TRIAL COUNSEL MISADVISED STRICKLAND NOT TO TESTIFY, WHICH PREJUDICED STRICKLAND.

Strickland raised this same ground in his second/successive motion for postconviction relief. In denying relief, the state trial court found:

> In the present case, the trial court did conduct a "*Farretta* type inquiry" with Defendant regarding his right to testify and the fact that the right was personal and his alone to make. See T.T. at 1138, lines 7, to 1139, line 15, a copy of which is attached. During this colloquy, Defendant stated: "I thought about it and I decided that I will decline to testify." Id. at 1139, lines 6-7. This was directly after the Court asked Defendant personally if he had spoken to

---

[2] Defense counsel challenged Erica Howard's credibility through cross-examination regarding her memories of the night of the murder.

> his attorney about the issue and "had the opportunity and full understanding of what the pros and cons are of the decision." Id. 1139, lines 3-5.
>
> Based on the above, including the Defendant's own admissions to the trial court at the time, the Court finds Defendant's waiver of his right to testify was knowingly, voluntarily, and intelligently made, and that Defendant personally made the choice not to testify. Accordingly, the Court finds the record documents directly refute Defendant's contention.

(Exhibit 6, Record of Post-Conviction Appeal, Case No. 2D06-3017; Exhibit 1, Vol.X: T1138-9).

A claim that counsel has prevented a defendant from taking the stand and offering his or her testimony is appropriately pursued as an ineffective assistance of counsel claim. *United States v. Teague,* 953 F.2d 1525 (11th Cir. 1992) (en banc); *see Nichols v. Butler*, 953 F.2d 1550 (11th Cir. 1992) (en banc) (A defendant must establish both the deficiency prong and the prejudice prong of an ineffectiveness claim to gain relief where he claims counsel prevented him from offering testimony in his own behalf.).

By electing not to testify, Strickland voluntarily and knowingly waived and abandoned any claim that he was denied the constitutional right to testify in his own behalf. The record demonstrates that he was aware of his right to testify.

Irregardless of trial counsel's advice, it was Strickland's own informed and knowing decision not to testify. Therefore, Strickland has not shown that counsel's performance was deficient and has not shown prejudice.

Ground Four does not warrant habeas corpus relief.

### Final Comments

Strickland's petition is time-barred. Even if it were not time-barred, the petition must be denied because Strickland's claims have no merit. The ruling of the state court did not

result in a decision that was contrary to, or involved an unreasonable application of, United States Supreme Court law, and did not result in a decision that were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Moreover, Strickland has not presented clear and convincing evidence to rebut the presumption of correctness of the trial court's findings.

**Accordingly, the Court orders:**

That Strickland's petition is denied. The Clerk is directed to enter judgment against Strickland and to close this case.

### CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on March 10, 2008.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Counsel of Record
George W. Strickland